IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DENISE LUSTER-MALONE, | ) |
| | ) No. 16 C 2903 |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Magistrate Judge Sidney I. Schenkier |
| COOK COUNTY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

On March 7, 2016, plaintiff Denise Luster-Malone filed a two-page *pro se* complaint against defendant Cook County in federal district court alleging that the arbitrator erroneously dismissed the complaints she had filed alleging that defendant had violated the Supplemental Relief Order for Cook County (doc. # 587: "SRO") entered in the case of *Shakman, et. al. v. Democratic Organization of Cook County, et al.*, 481 F. Supp. 1315, 1358 (N.D. Ill. 1979), *vacated sub nom., Shakman v. Dunne*, 829 F.2d 1387, 1398 (7th Cir. 1987), *cert. denied*, 484 U.S. 1065 (1988) ("Shakman Decree") (doc. # 1: Compl.; doc. # 35: Def.'s Mot. to Dismiss). Cook County has filed a motion to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and the motion is now fully briefed. On September 6, 2017, the case was reassigned to this Court pursuant to the SRO (doc. # 40). For the reasons that follow, we grant Cook County's motion to dismiss.

I.

When ruling on a motion to dismiss, "[w]e accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Forgue v. City of Chicago*, 873 F.3d 962, 966 (7th Cir. 2017) (internal citations and quotations omitted). A

document filed *pro se* – as plaintiff's is here – "is to be liberally construed, . . . and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Beal v. Beller*, 847 F.3d 897, 902 (7th Cir. 2017) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

In addition to considering the allegations in the complaint itself, "the court may consider documents . . . attached to the complaint, documents . . . central to the complaint and . . . referred to in it, and information that is properly subject to judicial notice." *Amin Ijbara Equity Corp. v. Vill. of Oak Lawn*, 860 F.3d 489, 493 n.2 (7th Cir. 2017) (internal citations and quotations omitted). "To the extent that an exhibit attached to or referenced by the complaint contradicts the complaint's allegations, the exhibit takes precedence." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013) (internal quotations and citations omitted).

## II.

The facts set forth below are stated as favorably to plaintiff as permitted by the complaint and other materials that the Court considers.

Plaintiff was employed as stenographer, or clerk, in the nursing department at John H. Stroger, Jr. Hospital ("Stroger Hospital"), part of the Cook County Health and Hospital System ("CCHHS"), before she was suspended on September 21, 2009, and then discharged on November 6, 2009, for the stated grounds of gross insubordination and falsifying time sheets. Plaintiff contested her termination in multiple ways: (a) by filing a grievance with her union, the American Federation of State, County and Municipal Employees Union, Council 31, Local 1111 ("Union"); (b) by filing charges with the Illinois Department of Human Rights ("IDHR") and the Equal Employment Opportunity Commission ("EEOC"); and (c) by filling out dozens of

complaint forms for the Office of the Cook County Complaint Administrator, alleging that she was terminated for unlawful political reasons. We address each of these challenges in turn.

### A.

Plaintiff filed a grievance with the Union in October 2009. This grievance culminated in an arbitration hearing with Stroger Hospital on February 22, 2011, and the arbitrator issued a written decision on March 14, 2011 (Pl.'s Compl., Ex. 32: 2011 Arbitrator Decision). In the decision, the arbitrator determined that Stroger Hospital had cause within the meaning of the labor agreement to terminate plaintiff for the two "major cause" offenses with which she was charged (*Id.* at 1-2). Regarding the first offense -- requesting pay for overtime hours plaintiff claimed to have worked on August 8, 2009 -- the arbitrator found that there was no credible evidence that she had actually performed work on that date, and that she was culpable for seeking pay for time not worked (*Id.* at 2-3, 5). Regarding the second offense -- insubordination to the director of her division on September 21, 2009 -- the arbitrator found that the evidence established that plaintiff's supervisor had repeatedly directed her to perform a reasonable work assignment, but she had refused to comply until another supervisor and a Union representative arrived, and even then, she did not complete the work (*Id.* at 14).

The arbitrator found "serious problems arising out of" plaintiff's testimony, and stated that both rule violations included "an intended deception relating to the work she had performed" (*Id.* at 10-14). Furthermore, the arbitrator stated that "[t]here was <u>no support</u> for [Ms. Luster Malone's] contentions that she was being 'set up,'" and that she was "far from a credible witness" (2011 Arbitrator Decision at 14) (emphasis in original). Plaintiff did not file a timely suit challenging this arbitration award.

3

## B.

Plaintiff filed charges with the IDHR and the EEOC in October 2009, alleging that she was discharged from her position due to a physical disability (morbid obesity) and in retaliation for filing a charge of discrimination due to her disability (Pl.'s Compl., Ex. 19: IDHR Investigation Report, Addendum at 1). The IDHR investigator found that there was no evidence that Stroger Hospital dismissed plaintiff due to her disability or that she was dismissed in retaliation for her charge of discrimination (*Id.* at 13-18). Rather, the investigation revealed plaintiff was discharged because she had violated Stroger Hospital's policies (*Id.*). The investigator recommended that IDHR find a lack of substantial evidence on both charges (*Id.*), and on July 13, 2011, the IDHR issued plaintiff a notice of dismissal for lack of substantial evidence to support her allegations (Pl.'s Compl., Ex. 19: Notice of Dismissal). Plaintiff did not file a timely suit raising the claims dismissed by the IDHR.

## C.

From September 2009 through 2012, plaintiff also submitted dozens of complaint forms to the Office of the Cook County Complaint Administrator. In 2009 and 2010, plaintiff frequently attached notes to the complaints alleging that another employee at Stroger Hospital (Antoinette Williams) had committed worse offenses than plaintiff, but was not penalized because she had "political connections" with Todd Stroger (*see, e.g.*, Pl.'s Compl., Exs. 12, 13, 14, 15, 16, 17, 18, 20). In November 2010, plaintiff alleged in a complaint that Ms. Williams, Carmin Willis-Goodloe (the Union president and clerk at Stroger County Hospital), Helen Thornton (the union legal counsel), and Steven Klem (plaintiff's attorney), "all tried to railroad me into a settlement offer. Both attorneys presented two different offers" (Pl.'s Compl., Ex. 22). In January 2011, plaintiff wrote that Mr. Klem and Ms. Thornton "was [*sic*] working against me

4

instead of helping me" by trying to coerce her to accept a settlement offer that would have reinstated plaintiff to her position in a different location within Stroger Hospital with full seniority and continuity of service (Pl.'s Compl., Ex. 23). Plaintiff terminated Mr. Klem as her lawyer on December 6, 2010 (*Id.*), and thereafter she was represented by Ms. Thornton in the arbitration that occurred in February 2011 (Pl.'s Compl., Ex. 25). In 2011 and 2012, plaintiff continued to submit complaint forms (*see*, Pl.'s Compl., Exs. 28, 29, 30, 31, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44). She alleged that other employees of Stroger Hospital -- some of whom she believed had political connections -- committed worse offenses than she did, but unlike plaintiff, they kept their jobs (*Id.*).

Under the SRO, plaintiff had the option of either seeking relief through the claim and arbitration procedure established by the SRO -- beginning with filing a complaint with the Office of the Independent Inspector General ("OIIG")[1] -- or instead filing a claim in court under applicable law (SRO, § V, at 18-19). As is evident by the numerous complaint forms she submitted to the complaint administrator, Ms. Luster-Malone opted to pursue her remedy through the procedure established by the SRO.

Pursuant to the terms of the SRO, the OIIG investigated plaintiff's claims. On May 28, 2014, the OIIG issued a report denying her claims (Compl., Ex. 1, at 2). Under the SRO, that decision triggered another option for Ms. Luster-Malone. Within 45 days after the OIIG's report, plaintiff could have filed a court action asserting her claims of political discrimination, or she could have filed a complaint with the State's Attorney's Office (SRO, § V(A)(6), at 21, and § V(A)(9), at 22-23). The 45 days would have given her until Monday, July 14, 2014 to file either a complaint with the State's Attorney or a court action, because the 45th day fell on July 12, 2014, a Saturday.

---

[1]We note that the SRO refers to the OIIG as the "Inspector General's Office ('IGO')" (SRO, § 2(B), at 2).

Plaintiff chose to file a complaint with the State's Attorney's Office, which she did on July 15, 2014 (Compl., Ex. 1 at 2). In the complaint, Ms. Luster-Malone alleged that she was terminated on the basis of unlawful political discrimination (*Id.*). Plaintiff requested arbitration, and the matter was scheduled for hearing on May 20, 2015, and again on June 25, 2015, but postponed each time (*Id.* at 1). Plaintiff was represented by attorney Scott Skaletsky, Esq., throughout the arbitration proceedings (Compl. at 2). Before the arbitration hearing commenced, defendant Cook County filed a motion to dismiss the complaint (Compl., Ex. 1 at 1). On February 6, 2016, after briefing by the parties, the arbitrator assigned to hear the case issued a ruling granting the motion (Compl., Ex. 1: Arbitrator's Ruling on Def.'s Mot. to Dismiss ("2016 Arbitrator Ruling") at 1). The arbitrator offered two bases for his ruling.

*First*, the arbitrator determined that plaintiff's claim was foreclosed because in the 2011 arbitration, the arbitrator determined that defendant had proved that there was just cause for terminating plaintiff -- gross insubordination and falsifying overtime records for time not actually worked (2016 Arbitrator Ruling at 3). Relying on *Brown v. Cook County*, 661 F.3d 333, 337 (7th Cir. 2011), the arbitrator found that the existence of these non-political reasons for terminating plaintiff precluded Cook County's liability (*Id.*). *Second*, the arbitrator held that plaintiff's request for arbitration was untimely because it had come more than 45 days after the OIIG's report (*Id.* at 5).

Plaintiff filed this federal complaint *pro se* one month after the 2016 Arbitrator's ruling. On August 30, 2016, plaintiff moved for attorney representation (doc. # 10), and after filing her application for leave to proceed *in forma pauperis* (doc. # 13), the district court judge then presiding in the case granted plaintiff's motion for attorney representation and leave to proceed *in forma pauperis* (doc. # 14). After initial appearances and a joint status report were filed in the

case, on May 24, 2017, plaintiff's attorney moved to withdraw from the assignment due to "substantial and irreconcilable disagreement" with plaintiff (doc. # 31). Plaintiff filed a *pro se* response to her attorney's motion to withdraw, requesting that the court assign her a new attorney (doc. # 33). While plaintiff professed surprise at her attorney's motion, she asserted that the attorney was working against her and with the state's attorney, "the opposing side in the Shakman case" (*Id.* at 1-2). The district judge granted the attorney's motion to withdraw, but did not appoint another attorney for plaintiff (doc. # 34). Cook County's motion to dismiss followed.

### III.

As stated above, an individual alleging violations of the *Shakman* Decree or the SRO "may seek relief through the claim and arbitration procedure established by this SRO or may pursue his or her claim under applicable law," such as through a federal lawsuit alleging political discrimination (SRO, § V, at 18). Plaintiff sought relief for her allegations that defendant violated the *Shakman* Decree through the claim and arbitration procedure of the SRO. This resulted in the arbitrator's written ruling in 2016 granting defendant's motion to dismiss plaintiff's claims. The SRO allows an individual to challenge an arbitration ruling by incorporating the post-arbitration procedures set forth in the Illinois Uniform Arbitration Act, 710 ILCS 5/11-5/15 (SRO, § V(B)(7), at 26). The Arbitration Act provides that a party may move to vacate an arbitrator's decision within 90 days of receiving a copy of the arbitration award. 710 ILCS 5/12(b).

After the arbitrator's decision, plaintiff filed this lawsuit asserting a claim of political discrimination. While plaintiff's allegations are far from a model of clarity, a fair reading of her complaint is that she seeks to litigate her claims of *Shakman* Decree violations: she repeatedly refers to *Shakman* complaints that she presented to the Complaint Administrator that were turned

over to the OIIG, and she complains there has been no resolution of those complaints (presumably because the arbitrator granted defendant's motion to dismiss her SRO arbitration request without an evidentiary hearing).

Defendant argues that plaintiff's complaint must be dismissed because under the SRO, she may not proceed both through arbitration and through a federal lawsuit (doc. # 38: Def.'s Reply at 4-5). We agree that a plaintiff is obligated to choose one path or the other. To the extent that plaintiff seeks to assert a free-standing claim of political discrimination, her effort to do so comes too late.[2]

However, courts are "obligated to liberally construe a *pro se* plaintiff's pleadings." *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 811 (7th Cir. 2017). This Court agreed with the district court judge to whom this case was initially assigned that this case could be transferred to this Court, as the court overseeing the *Shakman* Decree, because the allegations in plaintiff's *pro se* complaint could be read as seeking to vacate the 2016 arbitration award. In her complaint, plaintiff primarily alleges that the 2016 arbitrator erred by refusing to hear her case and that defendant Cook County unreasonably delayed proceeding on her *Shakman* complaints (Compl. at 2). Giving plaintiff every benefit of the doubt, we will treat the complaint as alternatively seeking to vacate the arbitration decision. Thus, we proceed to determine whether plaintiff has set forth adequate grounds to vacate the Arbitrator's 2016 decision.[3]

---

[2]While we do not read the complaint as seeking to resurrect the claims of disability discrimination and retaliation rejected by the IDHR in July 2011, we note that any attempt to do so would be foreclosed for lack of timeliness.

[3]The arbitrator's decision is dated February 6, 2016, and plaintiff filed her complaint on March 7, 2016 -- well within the 90-day period for seeking review of an arbitration decision under the SRO and the Arbitration Act.

# IV.

The Arbitrator's 2016 ruling provided two alternative grounds for dismissing plaintiff's claims: (1) that defendant's liability was precluded because the 2011 arbitration decision in the Union grievance proceeding found that the County had proven they had just cause for terminating plaintiff (specifically, the non-political reasons of gross insubordination and falsifying overtime); and (2) plaintiff's request for arbitration was untimely because it had come more than 45 days after the OIIG's report (2016 Arbitrator Ruling at 3-5).

The SRO incorporates the "limited grounds" set forth in the Arbitration Act upon which a federal court can vacate an arbitrator's award, which include gross errors of law or fact, evidence of partiality or abuse of power by the arbitrator, corruption or fraud in the procurement of the award, or an unreasonable refusal to postpone the arbitration or hear material evidence which causes substantial prejudice to a party's rights. *Shakman v. Democratic Org. of Cook Cty.*, No. 69 C 2145, 2017 WL 962762, at *3 (N.D. Ill. Mar. 9, 2017) (citing 710 ILCS 5/12(a)(1)-(5); SRO, § V(B), at 24-26). Judicial review of arbitration awards is "extremely limited," and Illinois courts will uphold the validity of arbitration awards "wherever possible." *Shakman*, 2017 WL 962762, at *3 (quoting *Salsitz v. Kreiss*, 761 N.E. 2d 724, 731 (Ill. 2001)). "[T]he party seeking to vacate has a substantial burden to prove that one of the above criteria apply." *Shakman*, 2017 WL 962762, at *3 (citing *Shakman v. Democratic Organization of Cook County,* No. 69 C 2145, 2014 WL 2536486, at *4 (N.D. Ill. June 2, 2014)).

Here, the arbitrator relied on *Brown v. Cook County*, 661 F.3d 333, 337 (7th Cir. 2011), in determining that defendant's liability was precluded. In *Brown*, the Seventh Circuit held that "[i]f all that's charged is discrimination on political grounds, any nonpolitical ground that the defendant can prove would have caused the discrimination regardless of the presence of political

9

hostility will preclude liability." *Id.* The arbitrator in this case reasoned that the finding of just cause for plaintiff's termination in the 2011 Union arbitration showed that defendant had proved it had nonpolitical grounds to discharge plaintiff -- gross insubordination and falsifying overtime records -- which precluded defendant's liability for political discrimination (2016 Arbitrator Ruling at 3). We find no error -- much less gross error -- in the arbitrator's findings. *See Unite Here Local 1 v. Hyatt Corp.*, 862 F.3d 588, 600 n.8 (7th Cir. 2017) ("Generally speaking, the matter of a prior arbitration's preclusive effect on a later arbitration is one for the arbitrator himself or herself to address"). Thus, plaintiff has not met her burden of proving any of the extremely limited grounds upon which this Court could vacate the arbitrator's award.

In addition, we find no error in the arbitrator's second reason for dismissing plaintiff's arbitration claims -- that the request for arbitration was untimely. As explained above, pursuant to the SRO, after the OIIG completes its report, the complainant has 45 days to file a complaint with the state's attorney, after which settlement conferences and arbitration may be held (SRO, § V(A)(9), at 22-23). Here, plaintiff contacted the state's attorney on July 15, 2014 to contest the OIIG's report, which was issued May 28, 2014 (2016 Arbitrator Decision at 2, 5). The arbitrator found plaintiff contacted the state's attorney three days after the 45-day time limit (*Id.* at 5). Although, as we explain above, 45 days after May 28, 2014 was a Saturday, plaintiff -- who was represented by counsel at that time --was still one day late in making her filing with the state's attorney. Instead of contacting the state's attorney on the next business day after the 45 day limit -- July 14, 2014 -- plaintiff contacted the state's attorney on July 15, 2014. The arbitrator stated that the parties' briefing on the defendant's motion to dismiss "le[ft] these facts undisputed" (2016 Arbitrator Decision at 5). Plaintiff has offered no explanation for missing this deadline, or

why the arbitrator committed gross error in declining to disregard it. Thus, we find that the arbitrator did not err in finding that plaintiff's request for arbitration was untimely.

## CONCLUSION

For the foregoing reasons, we find that plaintiff has not set forth adequate grounds to vacate the 2016 arbitrator's ruling.[4] As this matter has come to us on a motion to dismiss, we grant Cook County's motion to dismiss plaintiff's complaint (doc. # 35). This case is terminated.

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

DATE: November 14, 2017

---

[4]To the extent plaintiff seeks relief for the OIIG's alleged "lack of due diligence in following the Path of a Patronage Complaint," this argument fails. Plaintiff notes that the OIIG did not issue its investigatory report within 180 days after plaintiff first filed her "Shakman complaints" in 2009 (doc. # 37: Pl.'s Resp. to Def.'s Mot. to Dismiss at 2). Under the SRO, if the OIIG fails to complete an investigation into an individual's claims within 180 days, the complainant may file a lawsuit within 45 days thereafter (SRO at 20-21). However, plaintiff did not file suit in those 45 days, and she was not prejudiced by the OIIG's delay. The limitations period was tolled from the date she filed her complaint until the date the OIIG issued its report (*Id.* at 21).

11